**In re OLD PIKE PUB, INC. d/b/a Pub Dennis, Debtor.**

**Bankruptcy No. 90–10073.**

United States Bankruptcy Court, D. Rhode Island.

May 22, 1990.

---

**14**

Louis A. Geremia, Quinn, Cuzzone & Geremia, Providence, R.I., for Old Pike Pub, Inc.

Peter J. Furness, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Landmark Medical Center.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on March 13, 1990 on the Motion of the lessor, Landmark Medical Center, requesting a determination that it is not subject to the provisions of the automatic stay, § 362, and to compel the debtor to vacate and surrender the property known as Pub Dennis, at Old Louisquisset Pike, North Smithfield, Rhode Island. After hearing, counsel were requested to, and did, submit memoranda on the limited issue of whether the parties' lessor-lessee relationship was terminated prior to the filing of the instant Chapter 11 petition. The effect of a prepetition termination would be to render said lease not assumable by the debtor at this time.

The facts relevant to this controversy are as follows:

On July 10, 1984, Beau Realty, Inc., the holding company of Old Pike Pub, Inc.,[1] entered into a five year lease with John E. Fogarty Memorial Hospital[2] for the period May 1, 1983 through April 30, 1988, with an option to renew for an additional five years. (See Exhibit A to Landmark's Motion.) Old Pike Pub has been in continuous possession of the subject premises for nearly six years.

On December 21, 1989, Fogarty Hospital sent the debtor a "notice of default," for failure to make lease payments. To cure the default, Old Pike tendered three checks to Fogarty, each for $5,000, but two of the checks were returned for insufficient funds. Dennis Beausoleil, the president of Old Pike Pub, testified that when he delivered the checks there were sufficient funds, but that said checks were dishonored because of a subsequent, "surprise" Internal Revenue Service levy on debtor's bank accounts. This testimony is uncontradicted. Nevertheless, because of the debtor's failure to cure the default, Fogarty commenced an eviction proceeding against Old Pike. That action was stayed by the filing of the debtor's Chapter 11 petition, on January 19, 1990. As of March 31, 1990, the debtor owed Fogarty $31,500 in pre and post-petition rent.

Fogarty raises three issues concerning its request for relief: (1) whether the lease was properly assigned to Old Pike Pub in accordance with Paragraph 7 of the lease; (2) whether the option to renew the lease was properly exercised by Old Pike Pub in accordance with Paragraph 3 of the lease; and (3) if the lease was renewed, whether the lease terminated because of Old Pike's default prior to the debtor's filing its Chapter 11 petition (see Paragraph 9 of lease). We address each of these issues individually below.

■ Taking into consideration Fogarty's unconditional acceptance of Old Pike's rent checks since the inception of the lease and continually thereafter, and, more importantly, the fact that Fogarty has never questioned Old Pike's status as lessee *until now*, we conclude, without difficulty, that Fogarty long ago waived any right it may have had to require the assignment to be in writing. Fogarty's habitual and con-

---

**1.** Dennis Beausoleil, the principal of Old Pike Pub, testified that Beau Realty was created solely as a holding company for Old Pike Pub, for liquor liability purposes.

**2.** The parties have stipulated that Landmark Medical Center is the present operating entity for Fogarty Hospital, pursuant to an assignment executed a number of years ago. However, for clarity within this opinion, we refer to the movant as Fogarty Memorial Hospital.

sistent failure to enforce its technical contractual rights in a timely manner clearly calls for the application of laches in this instance.

■ Similarly, we rule that Fogarty waived its right to now argue that any renewal of the lease must be in writing. Fogarty's election to continue to honor the (informal) renewal, without reservation, is clearly demonstrated by its acceptance of Pike Pub's rent checks over a twenty month period. Although Jerry Gaube, the Chief Financial Officer for Landmark Medical Center, testified that in his opinion the lease expired on April 30, 1988, he had no personal knowledge of, and gave no explanation for Fogarty's inaction at that time. Fogarty's choice not to act within a reasonable time forecloses its right to now assert the "renewal in writing" requirement. Moreover, Fogarty's raising of the rent after April 30, 1988 further evidences its recognition of Old Pike's informal renewal of the lease.

■ Finally, we consider whether the lease terminated prior to the filing. It is undisputed that the lessee was in arrears in its rental obligations, and that on December 1, 1989, Fogarty sent a "Notice of Default under the Lease," requesting that it cure the arrearage. Although the debtor was unsuccessful in curing the arrearage because of the IRS levy on its bank accounts, we find that it did not act in bad faith in tendering to Fogarty three checks for $5,000 each. Under Paragraph 9 of the lease,

> [i]f there shall be a default in the payment of the rent or any part thereof for more than fifteen (15) days ... after written notice of such default by the Lessor, this Lease (if the Lessor so elects) shall thereupon become null and

void, and the Lessor shall have the right to re-enter or repossess the leased property....

Exhibit A to Fogarty's Motion.

While it is clear that the lessee did not cure the rental arrearage within fifteen days of receipt of the notice, the debtor argues, and we agree, that because Fogarty failed to notify the debtor that it was electing to declare the lease null and void if the default was not cured within the prescribed time, the automatic termination provision never took effect. We hold that Fogarty had an obligation[3] to formally notify Old Pike Pub of its intention to declare the lease null and void, and that, based upon the prior conduct of the parties, the failure to do so extended the debtor's right to cure the default, even at this time.

Accordingly, we rule that the subject lease has not terminated and that, pursuant to § 365(b)(1), the debtor is still entitled to cure the default and to assume said lease. At the hearing, the debtor represented that it was prepared to cure the post-petition arrearage immediately,[4] and could bring the pre-petition arrearage current within fifteen days. Based on this representation, we hereby impose such a payment schedule, and condition the debtor's right to assume the lease upon compliance therewith.

In accordance with all of the foregoing,[5] it is ORDERED that Fogarty's Motion to have automatic stay declared not applicable, and to compel debtor to vacate and surrender the property, is DENIED, but conditionally, as aforesaid.

Enter Judgment accordingly.

---

3. We make this finding based on the mutual casual conduct of the parties throughout the long-standing, informal existence of this lease, and on the ground that once the parties became accustomed to dealing loosely with each other, as they have here, an overt expression of the desire to change the relationship is required to change things. Such would not be the case if the lessor had been a stickler for detail from the beginning.

4. Mr. Beausoleil has represented that the debtor has been depositing all post-petition rents in an escrow account. This lends support to its intention and ability to assume this lease and cure all defaults.

5. The common thread in this proceeding, and the reason for the result herein, is simply that Fogarty's prior conduct, throughout Old Pike Pub's six year occupancy of the subject property, is entirely inconsistent with its position at this time.